IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Shawn Williams, David Green, Jamie Coomes, Malcum Kenner, and Andrew Barrett, *individually and as representatives of a class of participants and beneficiaries on behalf of the Centerra Group, LLC 401(k) Plan (nka the Constellis 401(k) Plan)*, <br><br> Plaintiffs, <br><br> v. <br><br> Centerra Group, LLC; The Benefit Plan Committee of the Centerra Investment Group, LLC; The Investment Committee of the Centerra Group, LLC; AON Hewitt Investment Consulting, Inc. (nka Aon Investments USA, Inc.); Paul P. Donahue; Deborah F. Ricci; Marcia Aldrich; and John Does 1–10; <br><br> Defendants. | Case No.: 1:20-cv-04220-SAL <br><br><br><br><br><br> **ORDER** |

This matter is before the court on Plaintiffs' motion for attorneys' fees, ECF No. 263, and Plaintiffs' and defendants Centerra Group, LLC, the Benefit Plan Committee of the Centerra Investment Group, LLC, the Investment Committee of the Centerra Group, LLC, Paul P. Donahue, and Marcia Aldrich (collectively, the "Centerra Defendants"); AON Hewitt Investment Consulting, Inc. (nka Aon Investments USA, Inc.) ("Aon"); and Deborah F. Ricci's  joint motion for final approval of class action settlement, ECF No. 266.

**BACKGROUND**

**I.      Procedural History**

1

Plaintiffs are five current employees of Centerra Group, LLC, who are participants in the Centerra 401(k) Plan ("the Plan"). They aim to obtain relief under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") and assert claims against the Centerra Defendants, Ricci, Aon, and John Does 1-10. [*See* ECF No. 1, Compl.] Specifically, Plaintiffs allege Defendants violated the fiduciary duties of prudence and loyalty imposed by 29 U.S.C. § 1104(a)(1)(A) and (B) engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a). *Id.* As to the latter claim, Plaintiffs take issue with Defendants' selection and retention of five collective investment trusts and investment options in the Plan: the Aon Hewitt Large Cap Equity Fund, the Aon Hewitt Small & Mid Cap Equity Fund, the Aon Hewitt Non-U.S. Equity Fund, the Aon Hewitt Core Plus Bond Fund, and the Aon Hewitt Retirement Solution target date funds (collectively, the "Aon Trusts"). *Id.* Plaintiffs bring additional claims for breach of fiduciary duty against the Centerra Defendants, alleging they failed adequately to monitor Aon and caused the Plan to incur excessive recordkeeping and administrative fees. *Id.*

On Defendants' motion, the court dismissed certain of Plaintiffs' claims and allowed the following claims to proceed: (1) Plaintiffs' claim that the Centerra Defendants breached their duty of prudence by selecting Aon and by selecting and retaining the Aon Trusts in the Plan's investment lineup (Count I); (2) Plaintiffs' claim that Aon breached its duties of prudence and loyalty by selecting and retaining the Aon Trusts for the Plan (Count I); (3) Plaintiffs' claim that the Centerra Defendants breached their duty of prudence by incurring excessive Plan administrative and recordkeeping fees (Count II); (4) Plaintiffs' claim that the Centerra Defendants engaged in a prohibited transaction by hiring Aon as an investment manager for the Plan (Count III); (5) Plaintiffs' claim that Aon engaged in prohibited transactions by causing the Plan to invest

in the Aon Trusts (Count III); and (6) Plaintiffs' claim that the Centerra Defendants failed to adequately monitor Aon (Count IV).  [ECF No. 175 at 2.]

The parties conducted discovery for a little over two years after the court ruled on the motions to dismiss, and Plaintiffs moved to certify a class on April 25, 2023.  [ECF No. 159.]  The parties stipulated that certification of a class was appropriate, and the court later granted Plaintiffs' motion and certified a class pursuant to the parties' stipulation.  [*See* ECF Nos. 175, 247.]  The court certified the following class:

> All participants and beneficiaries of the Centerra Group, LLC 401(k) Plan from July 1, 2016 until January 1, 2019, excluding Defendants and members of the Benefit Plan Committee of Centerra Group, LLC, and the Investment Committee of Centerra Group, LLC.

Ricci, the Centerra Defendants, and Aon each moved for summary judgment at the conclusion of discovery.  [*See* ECF Nos. 200, 201, 252.]  The court held a hearing on two of those summary judgment motions in November 2023.  On January 12, 2024, the parties informed the court that they reached a settlement in principle, and the court stayed the matter to allow for Plaintiffs to disseminate notice of the settlement.

The parties filed their joint motion for preliminary approval of the class action settlement, which the court granted on February 26, 2024.  Plaintiffs' counsel later filed a motion for an award of attorneys' fees, costs, and expenses, and class representative service awards.  The court did not receive objections to either the proposed settlement or to counsel's request for fees, costs, and expenses, and service awards.  The court held a fairness hearing on July 2, 2024, and granted both motions at the hearing.

## II.     Settlement Terms

The proposed settlement requires the Centerra Defendants and Aon to deposit a total of $7.5 million into an interest-bearing settlement fund, from which Plaintiffs propose to deduct attorneys' fees and costs, service awards for the class representatives, administrative expenses, and a contingency reserve.  [*See* ECF No. 258-1, Settlement Agreement §§ 2.30, 5.4, 5.5.]  Current plan participants receive distributions directly into their accounts tax-deferred; former participants may direct their distribution into another tax-deferred vehicle.  [*See* ECF No. 264 at 10–11.]

Finally, Plaintiffs seek $2.5 million in attorneys' fees; $659,240.95 in costs; and $100,000 for class representative service awards from the settlement fund.  [*See generally* ECF No. 264.]

The settlement agreement also provides for a release of all claims, not including claims involving personal injury.

## III.     Notice Plan

On May 3, 2024, Analytics Consulting, LLC, the settlement administrator, mailed 4,817 notices to class members.  [*See* ECF No. 267 at 4.]  The notice plan consisted of sending direct notice by First-Class mail to class members' last known addresses.  *Id.* at 4–5.  One-hundred fifty-one notices were returned to Analytics Consulting as undeliverable, but Analytics Consulted identified updated addresses for 119 of those notices.  *Id.* at 5.  97.5% of the class received direct notice of the settlement.

As of May 31, 2024, the deadline to object to the settlement, no class member objected to any portion of the proposed settlement or Plaintiffs' motion for fees, costs, and service awards.  *Id.*

## DISCUSSION

Having reviewed the parties' briefs and considered the applicable law and the lack of objections to the settlement, the court grants Plaintiffs' motion and approves the settlement. The court also grants class counsel's motion for an award of attorneys' fees, costs, and expenses, and a service award to Plaintiffs' representatives, Shawn Williams, David Green, Jamie Coomes, Malcum Kenner, and Andrew Barrett.

### I.    Motion for Final Approval of Settlement

Under Rule 23(e), FRCP, the court must approve a proposed settlement of the claims of a certified class. Approval of such settlements are committed to the "sound discretion of the district courts to appraise the reasonableness of particular class action settlements on a case by case basis, in light of the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The court can only provide its approval "after a hearing and only on finding [the settlement] is fair, reasonable, and adequate . . . ." Rule 23(e)(2).

The "'fairness analysis is intended primarily to ensure that a "settlement is reached as a result of good-faith bargaining at arm's length, without collusion."'" *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) (quoting *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015)). The Fourth Circuit has identified four factors to guide our consideration of a proposed settlement's fairness: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation." *Id.* (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020)). When the

5

settlement is a result of arm's-length negotiations, there is a strong presumption the settlement is fair and reasonable. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–159 (4th Cir. 1991).

As for adequacy, the Fourth Circuit has also identified factors the court must consider when assessing a class settlement's adequacy:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*1988 Trust for Allen Children*, 28 F.4th at 426 (quoting *Lumber Liquidators*, 952 F.3d at 484.) While these factors are similar to the factors the court considers when determining whether a settlement is fair and reasonable, "[t]he fairness prong is concerned with the procedural propriety of the proposed settlement agreement, while the adequacy prong focuses on the agreement's substantive propriety." *In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294, at *2 (D. Md. June 28, 2013).

Finally, Rule 23 itself requires us to consider whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. Rule 23(e)(2). In determining whether the proposed relief is "adequate," Rule 23 directs the court to take into account the following factors: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorneys' fees, including timing of payment; and (4) any agreement made in connection with the proposal. Rule 23(e)(2)(C).

For the reasons below, the court finds the proposes settlement is fair, reasonable, and adequate, and thus approves it under Rule 23(e).

### A.     Fairness

As noted above, the court's fairness analysis is designed to ensure that the settlement was not reached because of collusion but is instead the product of arms-length negotiation.  We conclude it was.

First, the posture of the case at the time Plaintiffs settled their claims and the extent of discovery conducted heavily suggest the agreement is fair.  Discovery in this case closed on June 1, 2023, and expert discovery concluded on September 27, 2023, almost three years after Plaintiffs initiated this action.  [*See* ECF No. 147, Third Amended Scheduling Order; ECF No. 197, Docket Text Order.]  During discovery, the parties reviewed and produced over 18,000 documents, disclosed eight expert witnesses, and deposed eighteen fact and expert witnesses.  [ECF No. 267 at 2–3.]  Moreover, the parties fully briefed two motions for summary judgment from the Centerra Defendants and Ricci and Aon separately moved for summary judgment at the time the parties settled Plaintiffs' claims.  Indeed, the parties were just over one month away from trial when they informed the court they reached a settlement.  The length of the case, coupled with the extensive discovery the parties undertook, weighs heavily in favor of finding the settlement is fair and reasonable.  *See Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (noting "a settlement in an immature case might point toward collusion, while a mature case will point in the opposite direction") (internal citations omitted).

Next, the circumstances surrounding settlement negotiations also suggest the settlement is fair and reasonable.  The parties engaged in two mediations, one with a nationally recognized mediator and the other with a federal Magistrate Judge.  [*See* ECF No. 232, Mediation Order; ECF

No. 267 at 6.] Moreover, the parties only achieved their global resolution after the court previously rejected Plaintiffs' proposed resolution with only two of the three groups of defendants—Ricci and Aon. [*See* ECF No. 250, Order Denying Motion to Voluntarily Dismiss and for Preliminary Approval of Class Settlement.] Put simply, the litigation—and the resolution—was "hard-fought." [*See* ECF No. 267 at 1–2.] Finally, counsel is highly experienced in class action litigation and, specifically, ERISA class action fiduciary breach claims. [*See* ECF No. 267 at 6–7.]

For these reasons, the court finds the settlement was the product of arms-length negotiation and is fair and reasonable. These factors weigh in favor of approving the settlement.

### B.    Adequacy

We also find the proposed settlement is adequate. The first and second prongs—the relative strengths of the plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses—require us "to examine how much the class sacrifices n settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). Considering the Fourth Circuit's recent decision affirming judgment in favor of Aon on similar claims involving the Aon Funds—*Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2023)—and other recent decisions finding in favor of defendant fiduciaries, Plaintiffs would likely face significant difficulty obtaining a successful recovery in this matter. [*See* ECF No. 264 at 5–7; ECF No. 267 at 7.] The first and second prongs thus weigh in favor of finding the proposed settlement is adequate.

The third factor also weighs in favor of finding the settlement is adequate. As counsel notes, the parties were on the eve of trial when the matter settled. Had they not reached a resolution, the parties would have been required to proceed to a lengthy, costly trial. Specifically,

the parties informed the court of their settlement on January 12, 2024, the day their pretrial disclosures were due. [*See* ECF No. 255.] Had they not settled, they would have been forced to expend significant resources briefing motions in limine and pretrial briefs, and in reviewing, compiling, and marking exhibits, not to mention preparing to examine witnesses. Even if Plaintiffs prevailed at trial, they would likely still face a lengthy and costly appellate process. [*See* ECF No. 264 at 5–6; ECF No. 267 at 8.] This factor too weighs in favor of finding the settlement is adequate.

The next factor—defendants' solvency and the likelihood of recovery on a litigated judgment—is neutral. As the parties note, there is no evidence that the Centerra Defendants and Aon could not satisfy a judgment if they were held jointly and severally liable. [*See* ECF No. 267 at 8.] Finally, none of the 4,817 class members who were sent notices objected to the settlement. For these reasons, then, the court finds that the proposed settlement is adequate.

## C.    Rule 23(e)

Finally, the court concludes the proposed settlement satisfies the requirements of Rule 23(e)(2). Many of the factors set forth in the rule overlap with factors the Fourth Circuit directs district courts to consider in *Jiffy Lube* and *Lumber Liquidators*, so the court need not address those factors again. To the extent the factors do not overlap, we conclude they also weigh in favor of approving the settlement. First, the class representatives and class counsel have adequately represented the class. As noted above, this litigation, in counsel's words, "hard-fought." The court agrees. The Centerra Defendants, Aon, and Ricci each filed separate motions to dismiss and motions for summary judgment, each of which Plaintiffs opposed. Class counsel dedicated approximately 7,500 hours of attorney and non-attorney time to litigate Plaintiffs' claims. [*See* ECF No. 264-1, Struckhoff Decl. ¶ 6.] And the class representatives participated in and assisted

9

counsel with preparing discovery, including by responding to defendants' discovery requests and participating in depositions. *Id.* ¶¶ 7, 12, 15.

Moreover, the settlement proposal treats class members equitably relative to each other. Under the terms of the settlement, class members consist of authorized former plan participants and current plan participants. [*See generally* ECF No. 258-1 at Ex. 1, § 6 (describing plan of allocation).] They are then placed into two categories: current and authorized former participants and current and authorized former participants who invested in the Aon Collective Investment Trusts. Given that Plaintiffs' claims largely concerned the Aon Collective Investment Trusts, the participants who invested in those trusts will share in a greater amount of recovery. [*See generally* ECF No. 267-1 at 9–10.]

The court also concludes the relief provided for the class is adequate. As discussed above, the costs and risks associated with trial and appeal weigh in favor of approving the settlement. Moreover, and as will be discussed further below, the court approves Plaintiffs' motion for fees, costs, and class representative service awards. Finally, the method of distributing and processing class members' claims is also adequate. Class counsel's notice expressly outlines the allocation procedures class members must follow to receive their relief, and as noted above, allocates the class relief in a manner that entitles those current and former participants who invested in the disputed funds to a larger recovery while nonetheless providing relief for *all* current and authorized former class members.

For these reasons, the court concludes the proposed settlement is fair, reasonable, and adequate under both Rule 23(e)(2) and those factors the Fourth Circuit has directed us to consider. We thus **GRANT** the parties' joint motion for final settlement approval, ECF No. 267, and approve the parties' proposed settlement.

## II.     Motion for Attorneys' Fees, Costs, and Class Representatives Service Awards

Plaintiffs seek $2.5 million in attorneys' fees; $659,240.95 in costs; and $100,000 for class

representative service awards from the settlement fund.  [*See generally* ECF No. 264.]  As noted

above, no class member has objected to Plaintiffs' request for fees, costs, and service awards.  For

the reasons below, we grant the motion.

### A.     Attorneys' Fees

Rule 23(h) allows the court, in certified class actions, to award reasonable attorneys' fees

and nontaxable costs that are authorized either by law or the parties' agreement.  Fed. R. Civ. P.

23(h).  Plaintiffs here seek one-third of the gross settlement amount of $7.5 million—$2.5

million—as a reasonable fee award, along with a reimbursement of $659,240.95 in expenses.  [*See*

*generally* ECF No. 264.]  Plaintiffs also ask the court to award each class representative a service

award of $20,000 each, for a total of $100,000.  For the reasons below, the court approves

Plaintiffs' fees, costs, and service awards requests as reasonable, and directs those amounts to be

paid from the settlement fund.

It is well-settled that, "[w]hen a class settlement results in a common fund for the benefit

of class members, reasonable attorney's fees may be awarded from the common fund."  *Smith v.*

*Res-Care, Inc.*, No. 3:13-cv-5211, 2015 WL 6479658, at *7 (S.D. W. Va. Oct. 27, 2015).

Plaintiffs' counsel here requests we take the percentage-of-recovery method (or "percentage-fee"

method) to determine the appropriate amount of fees they are entitled to from the common fund.

Courts in the Fourth Circuit overwhelmingly favor this approach, which "is advantageous because

it ties the attorneys' awards to overall result achieved rather than the number of hours worked."

*In re Allura Fiber Cement Siding Litig.*, No. No. 2:19-mn-02886-DCN, 2021 WL 2043531, at *4

(D.S.C. May 21, 2021); *see also Kelly v. Johns Hopkins University*, No. 1:16-cv-02835, 2020 WL

11

434473, at *2 (D. Md. Jan. 28, 2020) (the percentage method is "'overwhelmingly' preferred") (citation omitted).  Courts in the fourth circuit have approved fees representing 1/3 of the settlement fund as reasonable.  *In re Allura*, 2021 WL 2043531, at *4 (collecting cases).  This is particularly true when courts use the lodestar method as a "cross-check."  *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 251 (E.D. Va. 2009).

The District of South Carolina's Local Civil Rules also require any requests for attorneys' fees to comply with the requirements the Fourth Circuit set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), even if a common fund is created and the party seeks to recover their fees under the percentage-fee method.  *See* Local Civil Rule 54.02(A).  *Barber* directs the court to consider the following factors in determining a reasonable attorneys' fee for the lodestar figure: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.  *Barber*, 577 F.2d at 226, n.28.  Certain of the factors might not be relevant to the specific matter before the court, so the court is not required to strictly apply the factors in every case.  *EEOC v. Serv. News, Co.*, 898 F.2d 958, 965 (4th Cir. 1990).

Given the District's guidance, we will first address Plaintiffs' request under the *Barber* factors and then conduct a lodestar cross-check.

1.     ***Barber* factors**

The first factor, ***time and labor expended***, supports Plaintiffs' counsel's fee request.  Class counsel dedicated significant time, resources, and effort to prosecuting Plaintiffs' claims: over 6,200 hours of attorney time and over 1,200 hours of non-attorney time.  [*See* ECF No. 264-1, Struckhoff Decl. ¶ 6.]  Counsel began investigating Plaintiffs' claims in early-2020, conducting in-depth analysis and research of publicly available documents, meeting with plan participants, and performing legal and financial analyses of potential claims and the plan's estimated losses.  *Id.* ¶¶ 7–8.  Counsel also engaged in extensive motions practice in connection with multiple motions to dismiss, motions for summary judgment, and their own motion for class certification, and conducted extensive discovery, reviewing over 170,000 pages of documents.  *Id.* ¶¶ 9–13.  These hours were reasonable considering the complexity of the case and the late stage at which it settled.

Next, the ***novelty and difficulty*** of the issues and ***the skill required to properly perform the legal services rendered*** suggests Plaintiffs' fee request is reasonable.  As many courts have recognized, ERISA is a "highly complex" and "rapidly evolving area of law," and "it takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claim sand defenses under ERISA, and bring a complex case to the point at which settlement is a reasonable possibility."  *Kelly*, 2020 WL 434473, at *4.  Here, too, class counsel was required to analyze many complex issues in connection with Plaintiffs' claims concerning alleged excessive fees and imprudent investments.

The ***attorneys' opportunity costs in pressing the litigation***, the ***customary fee for like work***, the ***attorneys' expectations at the outset of the litigation***, the ***time limitations imposed by the circumstances***, and ***attorneys' fee awards in similar cases*** also support class counsel's request.  As discussed above, class counsel spent over 7,500 hours of attorney and non-attorney time to

press Plaintiffs' claims, which prevented them from pursuing other class actions or allocating additional resources to other matters. Though class counsel was aware they would have to devote a significant amount of time and resources on this matter, the decision to pursue Plaintiffs' claims limited their ability to handle other matters and bring in additional income, since they operate on a contingency fee basis. Moreover, counsel's requested one-third fee is common in the Fourth Circuit. *See Kelly*, 2020 WL 434473, at *3 (collecting cases). This fee is also customary of fees awarded by courts around the country. [*See* ECF No. 264 at 14–15 (collecting cases).]

Counsel's ***experience, reputation, and ability*** also weigh in favor of their fee request. As other courts have recognized, class counsel is the "preeminent firm in 401(k) fee litigation," and have "achieved unparalleled results on behalf of its clients" despite "enormous risks." *See Kim Nolte et al. v. Cigna Corp. et al.*, No. 2:07-cv-02046, ECF No. 413 at 5. Class counsel here invested substantial resources in pressing Plaintiffs' claims and obtained a significant recovery for the class. Their handling of this matter reflects the skill and reputation that courts around the country have already recognized and, thus, supports their fee request. [*See* ECF No. 264 at 11–13 (collecting cases).]

Finally, we find the ***nature and length of counsel's professional relationship with Plaintiffs*** and ***the undesirability of the case within the legal community*** weigh in favor of counsel's fee request. Counsel did not have a professional relationship with the class representatives before filing suit and, given the significant resources counsel expended in prosecuting Plaintiffs' claims and the complexity of the issues, the court recognizes that this type of case is not highly desirable in the legal community.

For these reasons, we conclude the *Barber* factors weigh in favor of approving Plaintiffs' counsel's fee request.

### 2.    Lodestar cross-check

To conduct a lodestar cross-check, the court must determine the hours reasonably expended and multiply that amount by a reasonable hourly rate.  Class counsel spent 6,256.10 hours of attorney time and 1,273.40 hours of non-attorney time litigating this matter.  [*See* ECF No. 264-1, Struckhoff Decl. ¶ 6.]  Multiplied by hourly rates ranging from $425 per hour for paralegals and law clerks to $1,370 for senior attorneys with at least 25 years' experience, the resulting lodestar is $6,453,266.  The *requested* amount—$2.5 million—is only 39% of the lodestar, or a multiplier of .39.  Courts in the Fourth Circuit have approved of lodestar multipliers as high as 4.5 in complex cases.  *See In re Allura*, 2021 WL 2043531, at *7 (collecting cases).  Here, then, the lodestar cross-check supports class counsel's fee request.

Having thoroughly considered the *Barber* factors, the lodestar cross-check, and the lack of objections from class members, the court approves counsel's request for $2.5 million in attorneys' fees as fair and reasonable.

### B.    Costs

Class counsel also seeks reimbursement of litigation expenses in the amount of $659,240.95.  Generally, class counsel is entitled to nontaxable costs that are authorized by law or the parties' agreement.  Rule 23(h), FRCP.  Both the parties' settlement agreement and the common fund doctrine authorize such expenses here.  *See Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564 (D.S.C. 2015) ("Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine.").  Courts have approved the following as reimbursable expenses: court costs, transcripts, contractual personnel, document duplication, expert witness fees, photocopying, long distance telephone charges, postal, and miscellaneous.  *In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F. Supp. 440, 448 (D. Md. 1984).

Class counsel's costs may be categorized as follows: (1) experts and consultants; (2) local counsel legal services; (3) depositions; (4) data development and document organization; (5) travel, lodging, and parking; (6) mediation and settlement expenses; (7) research and investigation; (8) filing fees, hearing transcripts, subpoena services, and related costs; and (8) copies and postage. [*See* ECF No. 264-1, Struckhoff Decl. § 24.]  The court finds these expenses are legitimate expenses incurred in connection with prosecuting Plaintiffs' claims and that the amounts requested are reasonable.  The court thus grants class counsel's request for reimbursement of costs in the amount of $659,240.95.

## C. Class Representative Service Awards

Finally, Plaintiffs request the court award each of the five class representatives a service award of $20,000 each for a total of $100,000.  The court grants the request.  As the Fourth Circuit has recognized, such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015).  And in ERISA cases, "substantial" awards are appropriate "given the benefits accruing to the entire class in part resulting from [the class representatives'] efforts."  *Savani*, 121 F. Supp. 3d at 577.

As counsel notes, the class representatives greatly assisted counsel in pressing their claims, particularly by participating in written discovery and having their depositions taken.  The entire class will receive the benefit of Plaintiffs' substantial recovery, due in part to the class representatives' efforts in assisting class counsel with prosecuting their claims.  We thus grant Plaintiffs' motion and award the class representatives a service award of $20,000 each, for a total of $100,000.

## CONCLUSION

For the reasons above, the court **GRANTS** Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and class representatives' compensation, ECF No. 263, and the parties' joint motion for final approval of class action settlement, ECF No. 266. It is thus hereby **ORDERED** as follows:

1.      The operative complaint and all claims asserted therein in the Class Action are hereby dismissed with prejudice and without costs to any of the Settling Parties and Released Parties other than as provided for in the Settlement Agreement.

2.      The Plan, the Class Representatives, and the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, predecessors, successors, assigns, agents, and attorneys) hereby fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties (including Defendants) from the Released Claims, regardless of whether or not such Class Member receives a monetary benefit from the Settlement, executed and delivered a Former Participant Claim Form, filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Member have been approved or allowed.

3.      The Class Representatives, the Class Members, and the Plan acting individually or together, or in combination with others, are hereby barred from suing or seeking to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission) any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims.

Nothing herein shall preclude any action to enforce the terms of the Settlement Agreement in accordance with the procedures set forth in the Settlement Agreement.

4.     Class Counsel, the Class Representatives, the Class Members, or the Plan may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with the Defendants and the other Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Representative, each Class Member, and the Plan has and have hereby fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, Class Members, and the Plan have hereby acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in the Settlement Agreement of which this release is a part.

5.     The Class Representatives, Class Members, and the Plan hereby settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including without limitation, Section 1542 of the California Civil Code, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that if known by him or her would have materially affected his or her settlement with the debtor or released party." The Class Representatives, Class Members, and the Plan with respect to the Released Claims also hereby waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any

foreign country, or any principle of common law, which is similar, comparable, or equivalent in substance to Section 1542 of the California Civil Code.

6.    The Court finds that it has subject matter jurisdiction over the claims herein and personal jurisdiction over Class Members herein pursuant to the provisions of ERISA, and expressly retains that jurisdiction for purposes of enforcing this Final Order and the Settlement Agreement. Any motion to enforce paragraphs 8 through 12 of this Final Order or the Settlement Agreement, including by way of injunction, may be filed in this Court, and the provisions of the Settlement Agreement and/or this Final Order may also be asserted by way of an affirmative defense or counterclaim in response to any action that is asserted to violate the Settlement Agreement.

7.    Each Class Member shall hold harmless Defendants, Defense Counsel, and the Released Parties for any claims, liabilities, attorneys' fees, and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

8.    The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Current Participant and each Authorized Former Participant.

9.    With respect to payments or distributions to Authorized Former Participants, all questions not resolved by the Settlement Agreement shall be resolved by the Settlement Administrator in its sole and exclusive discretion.

10.    With respect to any matters that arise concerning the implementation of distributions to Current Participants (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall

be resolved by the Plan administrator or other fiduciaries of the Plan (or, as applicable, the Successor Plan) in accordance with applicable law and the governing terms of the Plan (or, as applicable, the Successor Plan).

11.    Within seven (7) calendar days following the issuance of all settlement payments to Class Members, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who was issued a settlement payment and the amount of such payment.

12.    Upon entry of this Order, all Class Members shall be bound by the Settlement Agreement (including any amendments) and by this Final Order.

13.    Upon entry of this Order, Aon and any person purporting to act on its behalf or asserting any claim under or through it are permanently barred, enjoined, and restrained from filing, commencing, prosecuting, maintaining or asserting any Barred Claims against the Centerra Defendants or Ricci or the Released Parties in this Class Action or in any other forum, action or proceeding of any kind. All such Barred Claims shall be extinguished, precluded, discharged, satisfied, and unenforceable.

14.    Upon entry of this Order, the Centerra Defendants, Ricci, and any person purporting to act on their or her behalf or asserting any claim under or through them or her are permanently barred, enjoined, and restrained from filing, commencing, prosecuting, maintaining or asserting any Barred Claims against Aon or the Released Parties in this Class Action or in any other forum, action or proceeding of any kind. All such Barred Claims shall be extinguished, precluded, discharged, satisfied, and unenforceable.

15.    Upon entry of this Order, the Centerra Defendants, Ricci, and any person purporting to act on their or her behalf or asserting any claim under or through them or her are permanently

barred, enjoined, and restrained from filing, commencing, prosecuting, maintaining or asserting any Barred Claims against the Centerra Defendants, Ricci, or the Released Parties in this Class Action or in any other forum, action or proceeding of any kind. All such Barred Claims shall be extinguished, precluded, discharged, satisfied, and unenforceable.

**IT IS SO ORDERED.**

September 17, 2024
Columbia, South Carolina

Sherri A. Lydon
United States District Judge

21